The Honorable, the United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court, court is in session. Today's case will be called as previously announced and the times will be as allotted to counsel. The case today is Damaris Justiniano v. Stephen Walker et al., Appeal No. 18-2015 and Damaris Johnson, I'm sorry, Damaris Justiniano v. Stephen Walker, Appeal No. 20-1063. Attorney Officer, you may mute your audio and video and Attorney King, you may proceed. Thank you and may it please the Court, my name is Jin Ho King, with me is Ilyas Rona and we represent Damaris Justiniano. We'd like to ask for one minute for rebuttal, please. Very well. Thank you. Now, my challenge today is to convince you that a thoughtful, reasonable judge abused his discretion in finding, first, that plaintiff's counsel had failed to exercise reasonable discretion in pursuing discovery about Walker and his misconduct, and second, that these facts wouldn't have made a difference for qualified immunity. I'll address each of these in turn, but both of them fall into a kind of a trap that's easy to fall into. And so on the question of diligence, the trap is... that if you lose on the two issues that you have stated, or indeed on either of them, that you are no longer challenging the original grant of summary judgment? No. We still... So there's a third issue before us, even though you may not plan to argue it? The question of summary judgments, we've argued previously. Yes. And so you're resting on those arguments? We are, although I'm happy to entertain questions about that as well. I just want to make sure that you weren't conceding that issue, getting the scope of the case. Yes, I understand that, and I appreciate that clarification. So on the question of diligence, I think that the trap is a focus on the documents as opposed to the facts that were contained in those documents. If we focus only on the documents... But why won't we focus on the documents since it was a documentary subpoena and a request for production of documents, both of which were resisted? The reason why we shouldn't focus solely on the documents is because the documents themselves aren't important. It's what those documents contain that are important. And the question therefore should be, what efforts did Plaintiff's Counsel take to learn those facts? But excuse me, Counsel, I think Judge Thompson's question is a perfectly valid one.  There are procedural avenues open to you to either obtain the documents or to have deferred a decision on summary judgment until you obtain the documents, which would have revealed the facts. And the diligence question, to my mind, turns at least in part on whether or not it can be said that in the absence of any effort on your part to avail yourself of those procedural avenues, the finding of no due diligence can be disturbed. I agree that it is a valid question. Again, I want to focus on those possible procedural avenues to obtain these facts. So Plaintiff's Counsel in this case used three. Excuse me, once more, and then I'll let you get started. I want your focus to be not too narrow. You have to focus on two things. You have to focus on why you didn't use certain procedural avenues to obtain the facts. You also have to focus on why you didn't use or attempt to employ certain procedural devices that would have postponed or delayed any decision on summary judgment until the discovery disputes were fully resolved. Absolutely, and I'll try my best to answer that question. So three procedural mechanisms were used to try to obtain these facts. A deposition, a subpoena for documents, and document requests. There's no rule in our federal civil procedures that requires the use of all procedures, but here Plaintiff's Counsel did use three, a subpoena, a document request, and a deposition. Some documents were received, and based on those documents, Plaintiff's Counsel was then and asked direct questions about those very issues. Answers were received. Now what has since been revealed is that those answers were untruthful. And so the question here... This whole case, I mean the merits of the controversy itself, turns on credibility findings. And it's hard to understand why knowing the posture of the case, you would not have pursued, diligently pursued, or more diligently pursued production of the documents with the thought that perhaps deposition would have been insufficient. I think that's a great question, and this really highlights... There's about four minutes remaining. Thank you. This really highlights the concern that what happens when there is false testimony, because let's say that this testimony is what it is, and there is an attempt to file a motion to compel to obtain these documents. The response is pretty straightforward. The response is that it's a fishing expedition. They already know what's in there. There's nothing. See his deposition testimony. He testified under oath, right? We cannot presuppose, with hindsight, that these documents would have been provided. No, you can't presuppose that, but you can follow up by attempting to get that objection overruled so you can get the documents, see old Ronald Reagan position, trust but verify, and verify what the circumstance is. And you could have done that, but as far as I can tell from the record, you didn't do that. You abandoned those efforts, at least in terms of the federal court case. The other thing you could have done is you could have asked for a further extension of the discovery period until the party's dispute over whether or not for the document the production was in order was resolved. You didn't do that. And the third thing you could have done is you could have invoked Rule 56D and asked the district court to defer any ruling on summary judgment until you had all the documents you were entitled to and thus had a full factual picture. And you didn't do that. I respectfully disagree on each of those points. Okay. Take them in reverse order. Did you file a Rule 56D motion? There is no requirement to file a Rule 56D motion. I didn't say there was a requirement. I asked you a question. Did you file it? The answer is no. All right. That's correct. And that's a device. It's not required, but it's available to you if you don't think the district court has all the information it needs to pass on a summary judgment motion. The reality... I apologize. Go ahead. Continue. Did you ask for a further extension of the discovery period? There were three extensions asked for. They were all granted. Did you ask for a fourth extension so you could get these documents produced? The answer is no, but there's a good reason for that. And that's because there's no basis to believe that these documents would have contained anything different from what was stated in deposition under oath. But all of this turns on a belief that Walker lied specifically about these things, right? And not only that he lied about them, that he then would conceal them somehow. Can you remind me how you got the documents? So these documents were obtained in a separate proceeding against the state pursuant to a motion to compel. And these were obtained in a different case that has a different standard in which it's a negligence standard for... And so that, because it's a different standard and because we're not talking about objective views on what the police officer did and qualified immunity, things about specific incidents of misconduct, particularly where they do not bear on credibility, the weight of that is very different. Why would it make it any more or less likely that the request would have been successful? That's the part I'm a little puzzled by. In other words, if you could do a motion to compel in that case and get them, what's the Particularly when, I mean, what was the record in that case with respect to... Was there deposition testimony there that was equally untruthful? These were consolidated depositions. And so the deposition testimony was the same, but the... Counsel, that's time. Why wouldn't it work here? Go ahead and answer, Counsel. Sorry, I wasn't quite sure of what that question was. So you have the same... Your defense to not asking for it here is that you had deposition testimony that indicated that there was no basis for the documents turning up anything different. But you have that same deposition testimony in the other case in which there was a motion to compel that turned up the documents. So what was the basis for asking for the motion to compel there? Whatever it was, you could have asked for it in this case too, right? The key difference is the difference between reasonable diligence and utmost diligence. In the latter case, for the state case, it was about getting everything possible for preparation for trial as opposed to simply for summary judgment. That is, there's a distinct difference. Particularly where it's not an issue of credibility generally for summary judgment. I understand my time's up. Thank you. Judge Hanson, I just had one other question which, if you don't mind, that was on the second issue under 60B, under the Rule 60, which is whether this makes any difference. Because if it doesn't make any difference, that takes care of the summary judgment motion, I would think implicitly as well. As I understand it, there is a key issue, and maybe you'll tell me this isn't the key issue, a key issue is who's approaching whom. And my understanding is that there is testimony about who is approaching whom that's not refuted by a different party, about which these documents wouldn't undermine that person's credibility in the least, as to what they testified as to who was approaching whom. So I'm not quite sure why this fight over what was reasonable diligence matters particularly. I think it's because the issue is that when you eliminate Walker's testimony, what is left is actually facts that would permit a jury to believe that Justiniano was not approaching. There's an independent witness saying that he was approaching, even still, even if you get rid of the Walker testimony. Well, she says that he was both approaching and wasn't approaching. So her testimony is hard to parse. I absolutely agree that at one point she does say that he was approaching, but the other witnesses don't say that. It's not a question of who was approaching, but when. The question is when. When were people approaching? Was it before the pepper spray or after the pepper spray? So it's my understanding, and correct me if I'm wrong, that before the pepper spray, there's one witness that says he was stationary, and there's another witness that says he was moving forward. Is that correct? That's right. And so in our view, this is a jury question. Hang on. So if you eliminate Walker from the mix, then you're saying that it would be a matter of credibility for the jury to determine if he was approaching or not approaching. That's correct. And so we're not saying that in all circumstances, Walker would not have the benefit of qualified immunity, but that the facts, because they're in dispute, they need to be found by a fact finder as opposed to a summary judgment. Let me just understand this aspect of it, then. Is the dispute independent of the new evidence? Given your answer to Judge Thompson, the factual dispute about who was moving and who wasn't pre-exists the new evidence you have casting doubt on the officer, doesn't it? I think that it's more nuanced than that, and that's because Walker's testimony and Silva Wimbush's testimony are in some ways matching. And so we can talk about corroboration or not. The others, there are gaps. And the question is, what fills those gaps? And what are the reasonable inferences from that? But I'm saying this evidence only goes to the credibility of Walker, right? That's correct. OK, so just put Walker aside for a second. If we put Walker aside, isn't your answer, Judge Thompson saying that there was just a dispute between witnesses as to whether Justino was approaching or not? There is still that dispute. And I think the answer to that, frankly, for both the main case and this case about the Rule 60 motion, we should be able to find a dispute in either circumstance.  And that's why we believe this newly discovered evidence makes that difference. But I guess what I'm having a little trouble with is how the Rule 60 fits in. If your position is that the initial error was granting summary judgment when there was a factual dispute, that's true whether or not he's right on the Rule 60b motion. Yes, that's correct. Any additional questions? No. Thank you, Counsel. Thank you, Your Honors. Attorney King, you can mute. And if at this time, if Attorney Officer would unmute and proceed with argument. Thank you. May it please the Court? Excuse me, Mr. Officer, can I ask that you start where Mr. King left off? Yes. If you assume that your client's testimony is subject to question because of these challenges to his credibility, I'm not saying I accept that. But the magistrate judge said in his opinion that even if you strip Walker's testimony entirely out of this case, the defendant is still entitled to summary judgment. Explain to us how that would, if you agree with that, and if so, how it would work. I do agree with that, Your Honor. And I disagree with my brother as to what the testimony of the other eyewitnesses is. There were three eyewitnesses in this case. Karen Karakides, Shannon McKee, and Ms. Sylvan Windbush. If you look at their testimony, I'm going to start with Karen Karakides. She was the first one to call for help to get a police officer to come for what she thought was a medical emergency. Her testimony was that she saw Trooper Walker trying to calm down Mr. Justiniano. She saw him. She was distracted by something. She pulled her head up and she saw that Justiniano had moved closer to Walker and lunged at him in the middle of the highway. Her testimony is unclear as to whether she saw pepper spray or not. Sharon McKee did not testify about, she testified that she saw Walker trying to calm down Justiniano who had been flailing his arms. She testified that Walker was trying to make Justiniano stay where he was or back up with gestures. She saw him take a step backward, him being Walker, and Justiniano was walking forward with his fists clenched and she said he looked like he might attack Walker. Walker backed away and as I said she didn't testify at all about use of pepper spray. But the third witness is Ms. Windbush. Ms. Windbush is in the best position to see what's happening because she testified she literally stopped her car. Traffic is slow. She came to a complete stop because had she gone forward she would have run into Trooper Walker who was in the highway after having jumped back away from Mr. Justiniano. That's the very first thing she saw, she says in her testimony. She also says that she saw two bursts of pepper spray which confirms what Trooper Walker says. So she saw Mr. Justiniano advancing on Trooper Walker who was retreating before he even used pepper spray. And her testimony on that is pretty clear. So she saw him advancing, used the pepper spray, Justiniano gets up, comes again, second use of pepper spray, then she says he's really mad and he's coming at the Trooper. So those are the facts that I think Judge Cabell found and that's the basis for the qualified immunity. Thank you. If I may, going back to the... Hang on, you're on mute David. There was a car outside playing really loud music but I wanted to spare you that. Your position is that there is no witness who testifies that Justiniano was doing anything other than approaching? That's correct. One witness testifies, and this is Ms. McKean, that she thought he was basically stationary when she first saw him but when she testified, by the end he has approached with his fists clenched. And so justifying, if all of that is true, if we were to read the record the same way you suggest we should read it, then the Rule 60 claim, even if the due diligence issue were resolved in favor of your opponent, wouldn't matter because the information challenging Walker's credibility would be irrelevant because there would be nothing in the record other than evidence of approach. Yes, Your Honor, I believe that to be true. Yes, that's my position and I think that's why Judge Cabell went through the exercise of stripping out Walker's testimony. The flip side, I'm just trying to figure out whether Rule 60 is a bit of a red herring in the sense that if there were evidence independent of Walker indicating that Justiniano had approached, then that would seem to provide a factual basis for a jury to find against you. And so the grant of summary judgment would be wrong but then the Rule 60 issue would be sort of a red herring because the error would have preceded the information casting doubt on Walker because there would be an independent basis for a jury to have a factual dispute to resolve because there would be a witness independent of Walker saying that there was an approach. That's what your opponent just told us. If there were a witness independent saying there was no approach, that might make this a closer question. There's about five minutes left. May I continue? Please. With respect to 60 v. 2, the 60 v. 2 motion, Your Honor, there was no diligence here, due or otherwise. Certainly, by the time of Trooper Walker's deposition, on that day, there was the concise officer history report that the plaintiff had. Counselor, I'm still very concerned about what appears to be pejorious testimony at a deposition. Your Honor, first I would address that by saying there are two questions that were answered incorrectly. One was whether Trooper Walker filled out a use of force report and he believed that he had when he testified in 2017 as to events that took place in 2014. And I can't explain that other than he misremembered. Or he perjured himself. Or he perjured himself. It appears to me to be the kind of question that wouldn't beg for perjury because either he did or he didn't. It's very provable. The other one was the reason why he was disciplined back in 2010. Again, in 2017, I would tell the court that if you look at the concise officer history report, this was a consolidated discipline bringing in some six or seven different allegations for which he's being disciplined. And I can only tell you that it is likely or possible that he didn't remember each and every one of them. Because if you look at his testimony, he describes three or four and then he says, oh wait, there's another one. So I don't think it's pejurious. And given that all that information was available to the plaintiff by simple subpoena or motion to compel, I don't see it as the kind of thing like a hidden expert report. Or information that's intentionally withheld. So I think, and the Anderson case tells us, there's kind of a sliding scale on what defendant misconduct looks like. And if there's this misconduct, I think it's at the very one end, at the other end being hiding hydrological reports and geological reports and those kinds of things. Moreover, I think the Anderson case tells us that there has to be some diligence on the part, even at a 60 v. 3, for the plaintiff or for a moving party to get relief. And if there's perjury, Your Honor, it's not in relation to anything that happened in this case. It really strikes me more as impeachment evidence. Or that might be introduced at trial for impeachment. Asking a jury to assume that if he misrepresented something here, or that he had been found untruthful by his superiors, then you may disregard his testimony. But again, that was already done by Judge Cabell. So while it's troubling there was misstated testimony, it could have clearly been clarified or used at trial, I suppose, if we got to trial. The Carrick case tells us that if you can go ahead and just subpoena the documents and get them and lay bare the misstatement, then you need to go ahead and do it. And in this case, the plaintiff did nothing. Now the plaintiff knew about those documents and must have thought them important because seven months after summary judgment in this case, they brought a motion to compel in the state action. That's time. Thank you. Thank you, Counselor. At this time, we have one minute of a rebuttal from Attorney King. We could ask Attorney Officer to please mute your audio and video and Attorney King to unmute yours. Thank you. Thank you. I would like to mention that to allow a party to benefit from potentially perjured testimony is something that this court has addressed in Crock. And it's something that we shouldn't encourage. Why don't you address what you see as the more nuanced evidence, which your brother says is straightforward? Absolutely. So we have the testimony of McKean and Kyriakides, both of whom place Mr. Justiniano in a stationary condition at the beginning of the encounter. The question comes down to when does he start moving? Does it happen before pepper spray or after pepper spray? And what is difficult but not impossible based on inferences to determine is that he moved after pepper spray was employed, notwithstanding what Sylva Wimbush testifies to. Because remember, Sylva Wimbush was also the person who testified that she saw three people gathered in a meeting when in fact no other witness Did anybody affirmatively testify that he was stationary after the use of the pepper spray? I don't think there's any need for there to be testimony that he was stationary after the use of pepper spray. Is there anyone who can say he was stationary before the use of pepper spray? If I may answer, McKean testifies that he was stationary at the beginning of the interaction. But do either of them say that he remained stationary at the time the pepper spray was applied? I couldn't find anything in either testimony that spoke to the pepper spray. The issue is about what are reasonable inferences. But an inference to be reasonable has to be drawn from facts. Am I incorrect in positing that neither of the other two witnesses said anything about when the pepper spray occurred in relation to when Justiniano moved? It's not fully correct because, for example, Keira Keides testifies that he's essentially still. She looks down for three seconds, which corresponds with the length of pepper spray that Walker testifies to using, and looks up and sees him beginning to move at that point. And did she say anything about whether that was before or after the pepper spray? I couldn't find anything. That's correct because she didn't see pepper spray because she looked down. What is affirmative evidence in the record of him being that a juror could rely on? There is the testimony of McKean and of Keira Keides, and reading those in conjunction with the timing and length of pepper spray use, the moments when they looked away, that is a reasonable basis in fact to infer that that was when the pepper spray was used. I apologize for hopefully I've answered the question, and I'm happy to answer any others. I just want to make sure that you are not also arguing that at the moment he started moving that any reasonable police officer would not have thought that it wouldn't be okay to pepper spray. Do you understand? Are you saying that movement didn't in and of itself justify a pepper spray? I'm not saying that movement justifies pepper spray. But it is an easier case for the panel to decide if he's not moving. Which there is certainly evidence to suggest that he was. Are you arguing that movement, are you arguing that a jury could find for you even if there was evidence he was moving? Yes, it depends on the nature of the movement. Is there anything in the evidence that a juror could rely on to find the nature of the movement you would need it to be in order for the jury to find for you? Yes, and that is inferences drawn from observations of Justiniano's behavior before the incident. That he wasn't threatening. That frankly movement by itself is innocent. The real question is whether there were threats implied or stated in either his behavior or his verbal statements. And Walker is the only one who testified that he heard any threat. He's the only one that testified that he saw a pen. Now the question is what behavior do we need to look at for Mr. Justiniano? Because he's not here with us to be able to tell us because he's been killed. And so this is this is a difficult case. I understand for the panel because we don't have a full picture. Witnesses are looking up. They're looking down. But that's the very nature of these kinds of death cases. And when we eliminate Walker's testimony, we we are in a very different place. And that's why we would ask for reversal of the judgments. Any other questions gentlemen? No. Thank you. Thank you very much.